**UNITED STATES of America, Appellee,**

v.

**Maurizio P. RENDINI, Defendant, Appellant.**

**No. 83–1506.**

United States Court of Appeals, First Circuit.

Argued April 5, 1984.

Decided July 10, 1984.

Usher A. Moren, Medford, Mass., with whom John F. Zamparelli, and David Berman, Medford, Mass., were on brief, for appellant.

A. John Pappalardo, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., and Thomas J. Curley, Jr., Asst. U.S. Atty., Boston, Mass., were on brief, for appellee.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and BONSAL,* Senior District Judge.

BONSAL, Senior District Judge.

Appellant Maurizio Paul Rendini ("Rendini") was convicted in the District Court of Massachusetts on June 2, 1983 of twenty counts of mail fraud (18 U.S.C. § 1341).[1] On July 1, 1983 he was sentenced to imprisonment for a period of one year. He appeals his conviction.

The facts as brought out at the trial may be summarized as follows:

At approximately 2 p.m. on April 2, 1980, Rendini, a budget analyst for the City of Boston, was riding in an automobile which was traveling along Boylston Street in Boston. Rendini was seated in the rear seat on the passenger side. The car was driven by its owner, John E. Powers, Clerk of the Massachusetts Supreme Judicial Court. Michael Donovan, Suffolk County Clerk for Civil Business, sat next to Powers, and Angus Griffin, Superintendent of the Suffolk County Courthouse, sat next to Rendini. As Powers' car approached a red light at the corner of Boylston and Arlington Streets, it was involved in an accident when an oil truck rolled along the driver's side of the car, contacted it and forced it towards the curb. After the accident, everyone got out of the car, and Powers asked each of the passengers if he was hurt. Each answered no. An attorney, Lawrence O'Donnell, a passerby who recognized all of the passengers in the car except Rendini, asked if anyone was hurt, and each of the passengers answered no. Rendini stated that the accident "couldn't hurt a flea." The passengers then got back into Powers' car and rode to their destination.

Rendini mentioned the accident to Albert DeMatteis, a co-worker in the Budget Department. DeMatteis, knowing that Rendini had a history of back problems, asked Rendini if he had hurt his back. Rendini said no, but added that the accident provided an excellent opportunity for a disability pension because of the witnesses available. Two or three days after the accident Rendini asked Griffin, a fellow passenger in Powers' car, if he realized that the accident occurred while they were on official business. When Griffin answered affirmatively, Rendini asked him if he had filled out an accident report. When Griffin answered "No. Why should I?" Rendini said, "Well, you never can tell. Something might occur later on that could be attributed to that accident and you'd be covered." On April 14, 1980 Rendini filed an accident report with the City of Boston's Workmen's Compensation Department.

Rendini reported for work on the day after the accident, April 3, 1980, and continued to work for the rest of the year. He visited his family physician, Dr. Philip Goldsmith, on September 15, 1980 for a routine six-month physical check-up and did not mention the April 2nd accident, nor did he complain about his back. When Dr. Goldsmith examined him on an unrelated matter in December, 1980, Rendini again did not mention his back.

In September, 1980, some five months after the accident, Rendini's immediate supervisor, McNeill, and other officials considered a proposal to transfer Rendini to the Deer Island Penal Institution in Winthrop to serve as Budget Officer. Rendini learned of the proposal and told colleagues that he did not want to go to Deer Island under any circumstances.

On October 14, 1980 Rendini consulted Dr. H. Archer Berman, an orthopedic surgeon, and informed Dr. Berman that he had suffered a back injury due to an accident on April 2, 1980. Dr. Berman concluded that Rendini was partially disabled. Rendini continued working, however, and

---

* Of the Southern District of New York, sitting by designation.

1. The indictment contained 21 counts; Rendini was acquitted on one count.

went to Dr. Berman's office frequently for heat treatments. On January 5, 1981, at Rendini's request Dr. Berman wrote a letter which stated that Rendini was permanently disabled. He stopped working on January 6 and took sick leave from January 7 until June 30, 1981.

On May 20, 1981 Rendini applied to the City of Boston Retirement Board for an accidental disability pension, citing the April 2, 1980 accident as the cause of his alleged disability. A panel of three doctors met to examine him on June 17, 1981 in accordance with M.G.L. c. 32 § 7. The panel included Dr. Berman, as Rendini's physician, Dr. George Keenan, as the Retirement Board's physician, and Dr. Diane English, who represented the Massachusetts Commissioner of Public Health and acted as the chairman of the panel. Rendini's medical history was discussed by the panel, and afterwards the panel members examined him. The three doctors, based on the evidence before them, agreed that Rendini had degenerative arthritis of the spine with probable degeneration of discs in the cervical and lumbar regions. The doctors reported muscle strain and irritation of nerves which had been aggravated by recent trauma.

The Retirement Board met on June 25, 1981, considered the doctors' report, and voted to grant Rendini an accidental disability pension of approximately $24,850 a year.

In 1982, in view of the expense of Rendini's pension, the City of Boston considered the possibility of suing the oil company or the driver of the truck which had been involved in the accident on April 2, 1980. However, examination of the accident records showed that no one had claimed to be injured. This led to an inquiry into the granting of the accidental disability pension to Rendini and a reopening of the proceedings before the Retirement Board. Rendini's indictment for mail fraud followed.

## DISCUSSION

Rendini contends that since he was granted an accidental disability pension in a state administrative proceeding, the federal mail fraud statute is not applicable. He asserts that this prosecution under the mail fraud statute constitutes an impermissible federal intrusion into state affairs in violation of the 10th Amendment to the Constitution.

Article I, § 8, Clause 7 of the Constitution provides that the Congress shall have the power to establish post offices and post roads, and Clause 18 provides that Congress has the power to make all laws necessary and proper for the "carrying into Execution" of this power. Accordingly, the mail fraud statute was enacted by Congress to protect the integrity of the mails by making it a crime to use them to implement fraudulent schemes of any kind. This would include using the mails to implement fraudulent schemes directed at a state agency. Hence we find no impermissible intrusion into state affairs in violation of the 10th Amendment. Nor do we find any merit to Rendini's contention that this proceeding seeks to relitigate the granting of a disability pension by the Retirement Board.

Earlier this year, in *United States v. McNeill,* 728 F.2d 5 (1st Cir.1984), we considered the applicability of the mail fraud statute on the appeal of McNeill, Rendini's immediate superior, who was convicted of using the mails in furtherance of a scheme to defraud the City of Boston Retirement System. There we found that the pension checks McNeill received through the mail were proceeds of the fraudulent scheme, and that the mailings were essential to the success of the scheme. We therefore held that by causing the mailings McNeill had violated the mail fraud statute. *United States v. McNeill, supra,* at 14–15; *see also Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *United States v. Martin,* 694 F.2d 885, 890 (1st Cir.1982).

Similarly, in this case there was evidence that Rendini caused the mailings which

were essential to the success of the scheme to defraud. The twenty-one-count indictment charged twenty-one separate mailings. The first count charged a mailing of a copy of the medical panel's report to the City of Boston Retirement Board (Rendini was acquitted on this count) and the remaining twenty counts charged that twenty pension checks were mailed to Rendini (Rendini was convicted on these twenty counts). The jury found that the mailing of these checks was in furtherance of a scheme to defraud. Therefore the mailings came within the scope of the mail fraud statute.

Rendini claims that the government was in possession of exculpatory evidence, perhaps statements made by others concerning the April 2, 1980 accident, which the government was required to furnish Rendini pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government replies that it has no knowledge of any such evidence. We find nothing in the record to indicate that the government was in possession of exculpatory information which it did not turn over to Rendini.

■ When Rendini applied for an accidental disability pension, his medical records were sent to the Boston Retirement Board. Rendini filed two motions to suppress these records on the ground that their production would violate his Fourth Amendment rights, and claims that the district court erred in denying these motions. However, Rendini voluntarily applied for an accidental disability pension, which required the use of the medical records. In doing so, he waived any expectation of privacy, and so the receipt of the records into evidence did not violate his Fourth Amendment rights.

For the same reason, Rendini's contention that his personnel records maintained by the City of Boston should have been suppressed is without merit.

■ Rendini objects, on the ground of hearsay, to the admission into evidence of a memorandum dated April 15, 1982 of a Retirement Board staff employee, Gerry Colella, concerning a conversation Colella had with John Powers, the driver of the car in the April 2 accident. The memorandum was to the effect that Colella had spoken with Powers, who had stated that the oil truck lightly nudged his car and that no one in the car had stated he was hurt. However, this memorandum was not admitted for the truth of the statements, but to show why Powers was called before the Retirement Board to testify about the accident. The court specifically instructed the jury that they were to consider the memorandum only for this limited purpose. We fail to find any abuse of discretion by the district judge in receiving the memorandum into evidence.

■ Rendini objects to the admission into evidence of a memorandum dated March 31, 1982 from Daniel Ozaruk, an employee of Boston's Workmen's Compensation Department, to Earl Franklin, the head of that Department. The memorandum stated that no third party action could be brought by the City against the oil company or the driver of the oil truck because Powers had said that no one had been hurt in the accident. The memorandum was received not for the truth of the statements, but to explain the reason Franklin sought further information from the Retirement Board. Here again the court explained to the jury that they were to consider the memorandum only for this limited purpose, and we find no abuse of the court's discretion.

■ At the meeting of the medical panel on June 17, 1981 which considered whether Rendini was eligible for a disability pension, Dr. English, the chairman of the panel, took notes which were received in evidence over Rendini's objection. We find that Dr. English's notes were properly received under Rule 803(4) of the Rules of Evidence as statements reasonably pertinent to medical diagnosis.

Rendini has made a number of other evidentiary objections which we have reviewed and find to be without merit. Final-

ly, we have reviewed the judge's charge to the jury and do not find reversible error.

*Affirmed.*