UNITED STATES of America, Plaintiff,

v.

Robert T. CARUSO, Defendant.

Criminal No. 95–330.

United States District Court,
D. New Jersey.

Nov. 27, 1996.

John J. Gibbons, Lawrence S. Lustberg, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Defendant.

Ralph A. Muoio, Matthew W. Frank, Caplin & Drysdale, Chartered, Washington, DC, for Coopers & Lybrand, LLP.

Ralph L. Marra, Assistant United States Attorney, Newark, NJ.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This matter is before the court on defendant Robert T. Caruso's pretrial motions. Additionally before the court is the government's motion for reciprocal discovery, a motion by the defendant to compel production of documents from Coopers & Lybrand, LLP ("C & L"), and a motion by C & L to quash the defendant's subpoena seeking production of documents.

Oral argument on these motions was held on October 8, 1996. At the conclusion of the hearing, the government and the defendant were directed to submit additional briefing regarding issues that were raised for the first time during oral argument. This additional briefing was completed on October 31, 1996.

### I. Factual Background

The defendant is a former partner and managing partner at the accounting firm of C & L. On June 27, 1995, the defendant was charged in an eighteen count indictment stemming from his alleged role in devising and implementing a scheme to defraud C &

L and Seton Hall University. The indictment charges Caruso with five counts of mail fraud in violation of 18 U.S.C. §§ 1341, 1346 and § 2. Additionally, the indictment charges Caruso with four counts of interstate transport of checks obtained by fraud, with four counts of tax evasion, and with five counts of money laundering. Finally, the indictment also seeks the criminal forfeiture of Caruso's property.

The indictment charges that Caruso engaged in a charity-refund scheme in which he would contribute sums of money to Seton Hall University, receive reimbursement from C & L for having made that contribution, but would then revoke his contribution, while at the same time retaining the reimbursement he had received from C & L for making the contribution. In implementing this alleged scheme, the indictment charges that Caruso utilized the United States Mails, engaged in money laundering, and failed to report income that he derived from his alleged fraudulent scheme.

## II. Discussion

### A. Motion to Dismiss the Indictment

The defendant argues that counts one through three of the indictment must be dismissed because the counts fail to charge a mail fraud violation. Counts one through three charge the defendant with committing mail fraud in violation of 18 U.S.C. §§ 1341, 1346 and 2. The counts are based upon the defendant's alleged role in scheming to defraud C & L of the sums defendant received as reimbursement for his alleged contributions to Seton Hall.

The defendant's argument is premised upon his interpretation of a case from the Court of Appeals of New York. According to the defendant, *People v. Zinke,* 76 N.Y.2d 8, 556 N.Y.S.2d 11, 555 N.E.2d 263 (1990), held that a partner in a general partnership cannot be convicted of larceny under New York Penal § 155.05 law for stealing partnership property. In *Zinke,* the court reasoned that general partners are alter egos of one another and that all members of a general partnership are joint owners of partnership property. The *Zinke* court thus held

that a partner cannot be convicted of larceny, which is the wrongful taking and carrying away of the property of another, because a partner charged with larceny would essentially be charged with taking from himself, which is not prohibited by the statute. Thus, under New York law, a partner in a general partnership who steals partnership property cannot be convicted under New York's larceny statute.

Drawing on *Zinke,* the defendant points out that the scope of the mail fraud statute is limited and defined by state law. *See Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). Relying upon *Zinke,* the defendant claims that it simply is not illegal under New York Law for a partner to steal from, or misappropriate property from his partners in a general partnership. Because state law acts to limit the scope of the mail fraud statute, and because state law does not criminalize the behavior in which the defendant allegedly engaged in this case, the defendant argues that he cannot be convicted for having engaged in mail fraud vis a vis C & L. Therefore, the defendant argues that counts 1–3 of the indictment must be dismissed. To hold otherwise, the defendant contends, would unconstitutionally permit Congress to criminalize that which New York has not criminalized.

The government argues in opposition that the mail fraud statute certainly applies in this case because the defendant is being charged with using his fiduciary position at C & L to engage in a scheme or artifice to defraud his partners, through use of the United States Mails. The government emphasizes that while the *Zinke* court refused to permit a partner's conviction under the larceny statute, the court still acknowledged that a partner has no right to use partnership property for non partnership purposes. Furthermore, the government distinguishes *Zinke* on the ground that fraud, with which the defendant is being charged, is much broader than the larceny statute at issue in *Zinke.* Finally, the government argues that even if state law somehow limited application of the mail fraud statute in this case, counts 1–3 would still not be subject to dismissal because those counts also allege violations of

§ 1346, the "honest services" federal law component of a mail fraud violation. For these reasons, the government argues that counts one through three of the indictment properly charge a mail fraud offense and should not be dismissed.

The mail fraud statute, 18 U.S.C. § 1341 provides, in pertinent part,

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... any such matter or thing, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341. Section 1346 provides that the "scheme or artifice to defraud" specified in § 1341, "includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. The Court of Appeals for the Third Circuit has explained that a mail fraud offense has three essential elements: 1) the existence of a scheme to defraud; 2) the participation by the defendant in the particular scheme with the specific intent to defraud; and 3) the use of the United States mails in furtherance of the fraudulent scheme. *United States v. Hannigan*, 27 F.3d 890, 892 (3d Cir.1994).

The purpose of the mail fraud statute, as reflected by the statutory language, and as indicated by the essential elements that I just described, is to prevent the United States Mails from becoming the instrument of fraudulent schemes. For example, the Court of Appeals for the First Circuit has explained that

Article I, § 8, Clause 7 of the Constitution provides that the Congress shall have the power to establish post offices and post roads, and Clause 18 provides that Congress has the power to make all laws necessary and proper for the "carrying into Execution" of this power. Accordingly, the mail fraud statute was enacted by Congress to protect the integrity of the mails by making it a crime to use them to implement fraudulent schemes *of any kind.*

*United States v. Rendini*, 738 F.2d 530, 533 (1st Cir.1984) (emphasis added). Moreover, courts have explained that the mail fraud statute is designed to prevent the post office from being used as an "instrument of crime." *United States v. Mandel*, 591 F.2d 1347, 1358 (4th Cir.), *aff'd in relevant part*, 602 F.2d 653 (4th Cir.1979) (in banc), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). It is thus clear that the mail fraud statute is intended to prohibit persons from effectuating or implementing fraudulent schemes through the use of the United States mails. *Rendini*, 738 F.2d at 533.

After reviewing the indictment pursuant to the foregoing principles and standards, I conclude that the indictment charges the defendant in counts 1–3 with mail fraud in violation of 18 U.S.C. §§ 1341 and 1346. The indictment alleges each of the essential elements of the mail fraud offense. Furthermore, the indictment describes in some detail the defendant's conduct which allegedly violated the statute. Insofar as the indictment alleges that the defendant used the mails as part of a scheme to defraud C & L, with the specific intent to defraud C & L, it appears that the mail fraud violation alleged herein constitutes exactly the type of conduct that the mail fraud statute was designed to prohibit.

I am not persuaded by the defendant's argument premised upon the *Zinke* case and the alleged limited scope of the mail fraud statute. The *Zinke* case was, pure and simple, a case which dealt with statutory interpretation. *See Zinke*, 556 N.Y.S.2d at 12, 555 N.E.2d at 264 ("The single question before us is whether the general partner in a limited partnership can be found guilty of larceny for misappropriating partnership funds. *As a matter of statutory interpretation*, we answer that question in the negative....") (emphasis added). In construing New York's larceny statute, the *Zinke* court concluded that it could not affirm the conviction of a partner under the statute because

the partner jointly owned the partnership property, and the larceny statute required a showing that the partner took the property "of another." Because the defendant's acts were plainly not prohibited by the statute, the court found that it could not uphold a conviction of the defendant based upon the statute.

In this case, unlike *Zinke*, the defendant is not being charged with larceny under the New York statute. The defendant is being charged with using the United States Mails as part of a scheme to either deprive C & L of its right to the defendant's honest services, or to otherwise obtain partnership funds to which he was not entitled.[1] As noted above, the indictment charges the defendant with each of the elements of a mail fraud offense. Accordingly, I find that counts 1–3 properly charge a mail fraud offense, even if the defendant could not be properly charged with committing larceny under New York State law. *See Badders v. United States*, 240 U.S. 391, 393, 36 S.Ct. 367, 367–68, 60 L.Ed. 706 (1916) ("Whatever the limits to its power, Congress may forbid putting letters into the post office when such acts are done in furtherance of a scheme that it regards as contrary to public policy, whether it can forbid the scheme or not."); *see also United States v. Bryan*, 58 F.3d 933, 940–41 (4th Cir.1995) (suggesting that the mail fraud statute contains no state law predicate violation requirement).

Moreover, I agree with the government's position that even if *Zinke* could somehow be construed as precluding mail fraud charges against the defendant as a matter of state law, the defendant would still be subject to prosecution under 18 U.S.C. § 1346. Section 1346 defines a "scheme or artifice to defraud" under the mail fraud statute as "in-

cluding a scheme or artifice to deprive another of the intangible right of honest services." Thus, regardless of whether state law criminalizes the defendant's conduct in this case, it is clear that Congress has criminalized, as a matter of federal law, schemes described in § 1346. Accordingly, Counts 1–3 of the indictment would not be subject to dismissal, even if *Zinke* somehow precluded the mail fraud charges, because the counts also allege violations of § 1346.

■ Finally, I am not persuaded by the defendant's federalism argument. The defendant claims that the federal government's prosecution of him under the mail fraud statute, even though state law does not criminalize the conduct underlying the prosecution, unconstitutionally interferes with New York State's right to declare what is and what is not criminal conduct. In support of this argument, the defendant relies upon *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and the *Lopez* Court's observation that states possess the primary responsibility for defining criminal conduct. *Id.* at ——, n. 3, 115 S.Ct. at 1631 n. 3.

The defendant's argument is unpersuasive. The federal government is not inappropriately intervening in New York's affairs by prosecuting the defendant under the mail fraud statute—the government is acting pursuant to the federal interest in protecting the United States Mails from misuse. *See, e.g., United States v. States*, 488 F.2d 761, 766–67 (8th Cir.1973) (rejecting argument that mail fraud prosecution improperly intervened in state affairs, because "the focus of the statute is upon misuse of the Postal Service, not the regulation of state affairs, and Congress clearly has the authority to regulate such misuse of the mails.") (citation omitted), *cert.*

---

1. As the government points out, New York Partnership Law, as confirmed by *Zinke*, 556 N.Y.S.2d at 14, 555 N.E.2d at 266, specifies that it is wrongful to use partnership property for nonpartnership purposes. Specifically, §§ 51(1) and (2) specify that a partner "has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners." N.Y.Partnership Law § 51(1) & (2). Moreover, as the government points out in its brief, the C &

L partnership agreement limits each partner's interest in the partnership to "the balance in his capital account, any interest thereon and his share of undistributed profits." Gov.Letter Brief, at 2 (Oct. 16, 1996) (citing C & L Partners and Principals Agreement, at 26). Additionally, partners' rights to partnership property are further limited under the agreement by the requirement that the partner "act at all times in the best interests of the Firm." *Id.* (citing C & L Partners and Principals Agreement, at 27).

388

*denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974); *see also United States v. Porcelli,* 865 F.2d 1352, 1359 (2d Cir.1989) (noting in dicta that the broad federal mail statute punishes "any scheme or artifice to defraud in which the jurisdictional means— the mails—are 'employed.'"), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). In view of the federal interest in protecting the mails from misuse, it does not violate any principles of federalism to prosecute the defendant under the mail fraud statute even if the underlying conduct is not criminalized by the State of New York.[2]

This conclusion is not altered by the recent decision in *United States v. Lopez.* The *Lopez* case involved a challenge to a statute which made it a federal offense to knowingly possess a firearm in a statutorily-defined "school zone." Congress purported to act pursuant to its power to regulate interstate commerce when it enacted the statute. However, in examining the constitutionality of the statute, the United States Supreme Court concluded that the statute actually bore no relation to interstate commerce and that the enactment of the statute was therefore beyond the scope of Congress's power to regulate interstate commerce. Accordingly, the Court struck the statute down as an unconstitutional exercise of Congressional power.

The instant case is distinguishable from *Lopez.* Unlike *Lopez,* this case involves Congress's exercise of power under the Postal Powers Clause. As noted above, Congress may, pursuant to the Postal Power, enact all laws necessary to protect the integrity of the United States Mails. Surely, it cannot be argued that Congressional power has been exceeded in this case, where the defendant is being charged with having used the mails as part of a scheme or artifice to wrongfully divert property from C & L.

For all of the foregoing reasons, I am not persuaded by the defendant's arguments and

will deny the defendant's motion to dismiss counts 1–3 of the indictment.

## B. Duplicity—Counts One through Three

Additionally, the defendant argues that Counts One through Three of the Indictment are duplicitous because the counts each charge two separate and distinct offenses. The indictment charges, at counts one through three, that the defendant violated both 18 U.S.C. § 1341 and § 1346. The defendant claims that § 1341 and § 1346 charge separate and distinct offenses which cannot be charged in the same count. The defendant seeks an order dismissing counts one through three, or an order requiring the government to elect between charging one, but not both statutory violations.

The government argues in opposition that counts one through three are not improperly duplicitous. Rather, the government claims that §§ 1341 and 1346 can be charged together because they do not charge two different offenses, but only two different methods of completing the same crime. The government thus contends that counts one through three are not duplicitous and do not require either dismissal or a court order requiring election by the government.

■ The Court of Appeals for the Third Circuit has explained that "[d]uplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Starks,* 515 F.2d 112, 116 (3d Cir. 1975). Duplicity is undesirable because it gives rise to several potential complications: 1) where an indictment is duplicitous, "a general verdict does not reveal exactly which crimes the jury found the defendant had committed," *United States v. Gomberg,* 715 F.2d 843, 845 (3d Cir.1983), *cert. denied,* 465 U.S. 1078, 104 S.Ct. 1439, 1440, 79 L.Ed.2d 760 (1984), 2) a duplicitous indictment may prejudice the defendant "with respect to evi-

2. To hold otherwise would result in a virtual abdication of federal authority to regulate the mails. Engrafting a state law predicate requirement to violations of the mail fraud statute would permit state law to act as a limitation on the protections afforded the mails through operation of the mail fraud statute. There is no basis for interpreting Congress's power under the Postal Clause as being limited in such manner, and there is no basis for concluding that the scope of the mail fraud statute is to be so limited. *See Rendini,* 738 F.2d at 533; *see also Badders,* 240 U.S. at 393, 36 S.Ct. at 367–68.

dentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other" *Starks,* 515 F.2d at 116, and 3) where an indictment is duplicitous and the case goes to the jury, there is no way of knowing with a general verdict on two separate offenses joined in a single count whether the jury was unanimous with respect to either. *Id.* at 117. In order to avoid these problems with duplicity, courts will either dismiss the duplicitous counts of an indictment, or require the government to make an election between charging one, but not both offenses.

■ Nonetheless, an indictment is not duplicitous in cases where the indictment does not charge two different offenses in the same count, but instead charges two different methods of completing the same general offense. *See, e.g., United States v. Goldberg,* 913 F.Supp. 629, 636 (D.Mass.1996). The Federal Rules of Criminal Procedure specifically authorize the charging in a single count of an indictment two different methods of committing a crime. *See* Fed.R.Crim.P. 7(c)(1) ("It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that *the defendant committed it by one or more specified means.*") (emphasis added).

■ In this case, the government has charged violations of 18 U.S.C. §§ 1341 and 1346 in counts one through three of the indictment. Generally, § 1341 criminalizes schemes or artifices to defraud accomplished through the use of the United States Mails. Section 1346 defines schemes or artifice to defraud under § 1341 as including schemes or artifices to deprive others of the intangible right of honest services. 18 U.S.C. § 1346.

Section 1346 was enacted following the Supreme Court's decision in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Although it had been the practice of federal courts to read the mail fraud statute as including prohibitions against schemes or artifices to defraud others of the intangible right to honest services, the *McNally* Court ruled that the language of the mail fraud statute did not include such offenses, and reversed convictions based

upon such a reading of the statute. Thereafter, Congress enacted 18 U.S.C. § 1346.

A plain reading of § 1346 clearly demonstrates that the section serves to define a set of offenses which are to be included within offenses occurring under the mail fraud statute, § 1341. Thus, the statute does not set forth an offense which should be interpreted as separate and distinct from a § 1341 offense. *See Goldberg,* 913 F.Supp. at 636 (explaining that because § 1346 merely explains the theory of honest services fraud, § 1346 does not constitute a distinct factual offense for which a jury could punish a defendant when §§ 1341 and 1346 are charged together). To the contrary, § 1346 can be interpreted as being a "definitional" statute which serves merely to further delineate the offenses which are encompassed within § 1341. *See id.* at 636 n. 7.

An indictment may charge within one count two means by which the defendant has committed the same general offense. Fed. R.Crim.P. 7(c). Plainly, that is the situation here. Counts one through three are not duplicitous. The defendant's motion seeking dismissal or an election on those counts is denied.

### C. Multiplicity: Counts 17 and 18

The defendant next argues that counts 17 and 18 of the indictment, which charge the defendant with violating 18 U.S.C. § 1957, and counts 14 through 16, which charge the defendant with violating 18 U.S.C. § 1956, are improperly multiplicitous because they charge essentially the same offenses, and are all based on the same conduct. The defendant argues that he cannot be punished for having violated both §§ 1956 and 1957 because there is no explicit authorization from Congress which would suggest that a defendant can be punished under both statutes for having engaged in the same conduct. Moreover, the defendant claims that a *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), analysis demonstrates that §§ 1956 and 1957 offenses are the same because a § 1957 offense is entirely subsumed by proof of a § 1956 offense. The defendant thus claims that Counts 17 and 18 and Counts 14 through 16 are multiplicitous

and he moves for either the dismissal of Counts 17 and 18, or for the government to elect between charging a violation of either § 1956 or § 1957.

In opposition, the government argues that there is no multiplicity problems in the indictment. According to the government, it is permissible to charge violations of § 1956 and § 1957, based upon the same conduct, because § 1957, contrary to the defendant's argument, does require proof of an element additional to that which is required to prove a violation of § 1956, i.e., that the transaction at issue involved $10,000 or more. Because convictions under both § 1956 and § 1957 would not constitute double punishment, the government argues that charging the violations in different counts based upon the same conduct is not multiplicitous.

■ "Multiplicity is the charging of the same offense in two or more counts of an indictment or information." *United States v. Stanfa*, 685 F.2d 85, 87 (3d Cir.1982) (citing *United States v. Starks*, 515 F.2d 112, 116 (3d Cir.1975)). The Court of Appeals for the Third Circuit has explained that

> Multiplicity, the charging of a single offense in different counts of an indictment, has the vice that it may lead to multiple sentences for a single violation. And even if that does not result, it may prejudice the jury against the defendant by creating the impression of more criminal activity on his part than in fact may have been present.

*United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir.1978). Courts must engage in a two pronged inquiry when examining an indictment for multiplicity problems. First, the court must inquire whether proof of one offense charged requires an additional fact that proof of the other offense does not necessitate. *Id.* Second, the court must examine whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts. *Id.*

■ After reviewing the indictment pursuant to this standard, I cannot agree with the defendant's multiplicity arguments. As the defendant acknowledges, §§ 1956 and 1957 each require proof of additional facts

not required by the other. Under § 1956, the government must prove: 1) that the defendant conducted or attempted to conduct a financial transaction, 2) which the defendant then knew involved the proceeds of unlawful activity, and 3) with the intent to promote or further unlawful activity. *United States v. Gaytan*, 74 F.3d 545, 555 (5th Cir.1996) (citing *United States v. Morris*, 977 F.2d 677, 682 (1st Cir.1982), *cert. denied*, 507 U.S. 988, 113 S.Ct. 1588, 123 L.Ed.2d 155 (1993)), *cert. denied*, —— U.S. ——, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996). As set forth below, the third element of a § 1956 violation is not required for a § 1957 conviction.

■ Under § 1957, the government must show 1) that the defendant engaged or attempted to engage, 2) in a monetary transaction, 3) in criminally derived property that is of a value greater than $10,000, 4) knowing that the property is derived from unlawful activity, and 5) that the property is, in fact, derived from specified unlawful activity. *United States v. Sokolow*, 91 F.3d 396, 408 (3d Cir.1996) (citing *United States v. Johnson*, 971 F.2d 562, 567 n. 3 (10th Cir.1992)). Proof of element number 3 in a § 1957 violation is not required to prove a violation of § 1956. Under a *Blockburger* analysis, §§ 1956 and 1957 each require proof of an element which is not required by the other. Therefore, the two statutes constitute different offenses, and it is not multiplicitous to charge the offenses in different counts.

The defendant nonetheless argues that he cannot be punished under two different statutes based upon the same conduct. To the extent the defendant claims multiplicity based upon the same evidence giving rise to two offenses, I cannot accept this argument. The Court of Appeals has explained that

> [T]wo counts are not multiplicitous simply because the same evidence that proves one also proves the second. Rather, two counts are multiplicious if the evidence shows that exactly the same facts that would make out one violation also make out the other.

*Stanfa*, 685 F.2d at 88. As I have already stated, there is no multiplicity in this indictment because proof a § 1956 violation does

not require "exactly the same facts" that would make out a violation of § 1957.

Finally, I reject the defendant's argument based upon *United States v. Seda*, 978 F.2d 779, 780 (2d Cir.1992). The *Seda* court upheld a district court's dismissal of certain counts of an indictment based upon the court's finding of multiplicity in the counts. In affirming the trial court, the Court of Appeals for the Second Circuit suggested that where two statutes require proof of different elements, but where there is no realistic possibility of violating one statute without violating the other, there is essentially only one offense involved, and it may be multiplicitous to charge two different statutory violations. In accord with the *Seda* court's reasoning, the defendant argues that it is multiplicitous to charge him with violating both § 1956 and § 1957 because there is no realistic possibility of his violating § 1956 without also violating § 1957.

This argument is unpersuasive because the present case is distinguishable from *Seda*. In *Seda*, the government charged the defendant with violating 18 U.S.C. § 1014 for submitting false statements to a bank for the purpose of influencing its actions. The government relied upon those same false statements in charging the defendant with bank fraud "by assisting in preparing and submitting to the bank fraudulent loan applications and causing the bank to issue loans," under 18 U.S.C. § 1344. The Court of Appeals found the relationship between the conduct underlying the § 1014 and § 1344 violations to be significant. In reasoning that charging a § 1014 violation and a § 1344 violation based upon the same conduct constituted multiplicity, the *Seda* court explained that "[t]he false loan applications are simply a species of bank fraud...." *Id.* at 782.

In this case, the violations of § 1956 and § 1957, though based upon the same conduct, are unlike the interplay between §§ 1014 and 1344 in *Seda*, because the conduct which violates § 1956 is not merely a species of the offense conduct which adds up to a violation of § 1957. Sections 1956 and 1957 represent two distinct offenses, as the preceding analysis explains, and the sections vindicate two separate congressional objectives: i.e.,

§ 1956 acts to prohibit money laundering, and § 1957 serves to criminalize activities by persons who engage in transactions with funds derived from money laundering. Thus, a violation of either of the statutes is not merely a species of the other, but rather constitute distinct, separately punishable offenses.

Because §§ 1956 and 1957 do not constitute essentially the same offense, violations of the statutes may be charged in different counts. The indictment in this case is not multiplicitous and the defendant's motion on this ground is therefore denied.

### D. Motion to Strike Surplusage—Motion for a Bill of Particulars

■■■ The defendant has additionally moved to strike allegedly prejudicial surplus language from Counts 1–3 and 4 and 5 of the indictment. With respect to Counts 1–3, the defendant claims that the reference in paragraph 8 on page 3 of the indictment to the defendant's "$1.7 million home in Bryn Mawr, Pennsylvania" should be stricken from the indictment. The defendant contends that the language is irrelevant to the charges against him and that inclusion of the reference is a tactic designed to "make the defendant appear unsympathetic to the jury by tarring him as a wealthy and greedy individual."

Furthermore, the defendant also requests the striking of paragraph 6 of counts four and five of the indictment. That paragraph states:

> It was a further part of the scheme and artifice to defraud that defendant ROBERT T. CARUSO, while purporting to make about $176,175 in contributions to Seton Hall between 1987 and 1990, through his pattern of refunds and reimbursements he, in fact, made net contributions of about $2,059 during that time period.

Indictment, at page 6. The defendant claims that this paragraph should be stricken because it suggests that the defendant was involved in a fraud which was greater in magnitude (i.e., $176,175) than that for which he is being charged. Moreover, the defen-

dant contends that the $176,175 allegation conflicts with the indictment's earlier mention that the fraud involved $150,000. Because the two figures could thus confuse a jury, the defendant claims that Paragraph 6 of counts 4 and 5 should be stricken.

Alternatively, the defendant has moved for a bill of particulars on Paragraph 6 of Counts 4 and 5 if this court does not strike the paragraph.

The government argues in opposition that the indictment's reference to the defendant's "$1.7 million home" should not be stricken because the defendant's house-building project constituted the ultimate destination for defrauded funds. Additionally, the government contends that the house project is relevant for the purpose of proving the defendant's intent and state of mind in committing the frauds. Furthermore, the government argues that the indictment's reference to the defendant's net contributions to Seton Hall should not be stricken because the Seton Hall contributions were an intrinsic part of the fraud and relevant evidence of defendant's fraudulent intent. The government also claims that the evidence of defendant's contribution refunds is relevant to evidence that will be introduced at trial.

Finally, the government claims that the defendant's request for a bill of particulars on counts four and five is without merit. The government argues that the defendant has been provided with discovery which fully informs the defendant of the charges which have been filed against him. Therefore, the government claims that defendant is not entitled to a bill of particulars on Counts four and five.

Federal Rule of Criminal Procedure 7(d) states that "[t]he court on motion of the defendant may strike surplusage from the indictment or information."

A motion to strike surplusage from an indictment is addressed to the sound discretion of the District Court and should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter.

*United States v. Vastola,* 670 F.Supp. 1244, 1254 (D.N.J.1987) (quoting *Dranow v. United States,* 307 F.2d 545, 558 (8th Cir.1962)). "It is an exacting standard which is met only in rare circumstances." *United States v. Eisenberg,* 773 F.Supp. 662, 700 (D.N.J.1991) (citing *United States v. Huppert,* 917 F.2d 507, 511 (11th Cir.1990)).

■ Significantly, where language in an indictment is not essential to the charges contained therein, the language will not be stricken as surplusage in cases where the language is relevant in a general sense to the overall scheme alleged in the indictment. *United States v. Giampa,* 904 F.Supp. 235, 271–72 (D.N.J.1995) (quoting *United States v. Wecker,* 620 F.Supp. 1002, 1006 (D.Del. 1985)). Additionally, language may remain in an indictment in cases where the language is relevant to the evidence that the government will present at trial. *See Eisenberg,* 773 F.Supp. at 700.

In this case, I will decline to strike the language that the defendant considers surplusage. As a preliminary matter, reference to the defendant's home and reference to the net sum of contributions to Seton Hall both relate in a general sense to the overall scheme alleged in the indictment. Moreover, the government claims that it will produce evidence at trial in accord with the allegedly surplus language in the indictment. Accordingly, I find that the language the defendant seeks to strike is not surplusage and I will deny the defendant's motion to strike. Moreover, I note that the defendant's claims of prejudice stemming from the language in the indictment can be more than adequately addressed with instructions to the jury that they are not to consider the indictment as evidence and that the indictment should not be relied upon as providing any inference of guilt against the defendant. *See Giampa,* 904 F.Supp. at 272 (D.N.J.1995) (noting that jury instructions could protect against improper juror reliance upon indictment as evidence).

■ I will also deny the defendant's request for a bill of particulars regarding paragraph 8 of counts 4 and 5 of the indictment.

Fed.R.Crim.P. 7(f) provides in relevant part that "[t]he court may direct the filing of

a bill of particulars." Rule 7(f) was amended in 1966 "to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir.1989) (quoting Fed. R.Crim.P. 7 advisory committee's note to 1966 amendment).

 There are conflicting considerations that a district court should consider in determining whether to grant or deny a bill of particulars. On the defendant's side, bills of particular should be granted "whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Rosa*, 891 F.2d at 1066. *See also United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir.1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972) (purpose of bill of particulars is "to inform the defendant of the nature of the charges brought against him [or her], to adequately prepare his [or her] defense, to avoid surprise during the trial and to protect him [or her] against a second prosecution for an inadequately described offense."). Countervailing considerations range from the "personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so." *Rosa* at 1066.

 Furthermore, when discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines. *See United States v. Boffa*, 513 F.Supp. 444, 485 (D.Del.1980). However, "[a] bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir.1985) (citations omitted). A bill of particulars is intended to give the defendant "only the minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *Id.*

In this case, the government has represented to the court that it has provided the defendant with Seton Hall files relating to all of the defendant's contributions to Seton Hall. The government further represents to the court that these files contain copies of Caruso's checks and Seton Hall's refund checks. Additionally, the government has represented that the files contain copies of correspondence, and phone message notes.

The paragraph of the indictment at issue, Paragraph 6 of Counts 4 and 5, states that the defendant purportedly made approximately $176,175 in contributions to Seton Hall during the years 1987 to 1990. The discovery provided to the defendant by the government, consisting, *inter alia*, of all contribution checks made by the defendant to Seton Hall, surely "fills in the outline of the indictment" sufficiently enough that the defendant is adequately informed of the charges being made against him.

Given the discovery provided by the government in this case and the factual and legal information provided in the indictment, I conclude that the defendant has been provided with enough information to adequately inform him of the nature of the charges brought against him, to prepare his defenses, to avoid surprise during the trial, and to protect him against a second prosecution for an inadequately described offense. *See Addonizio*, 451 F.2d at 63–64.

Thus, after weighing the relevant considerations, I have concluded that the defendant is not entitled to a bill of particulars with respect to Counts 4 and 5 of the indictment.

### E. Motion for a Bill of Particulars on Counts 6 through 9

 Next, the defendant has moved for a bill of particulars on Counts 6 through 9 of the indictment. Counts 6 through 9 of the indictment charge the defendant with Interstate Transportation of Checks Taken by Fraud. The defendant acknowledges that the Counts adequately inform him of the charge of Interstate Transportation of Checks Taken By Fraud, but the defendant argues that the indictment is silent "as to the means by which the defendant caused the checks to be transported in interstate commerce, the dates the checks allegedly were transported, and the individuals or institutions who completed the act of transporta-

tion." Def.Brief. at 21. The defendant thus claims that he is entitled to a Bill of Particulars.

The government claims in opposition that the indictment specifies dates, documents and the acts with which the defendant is charged. Additionally, the government argues that the defendant has received not only a detailed indictment, but has also received significant discovery. Specifically, the government claims

> In this case, defendant not only has a detailed indictment, but in discovery defendant had access to the checks, correspondence, and internal memoranda, all of which provide the information defendant seeks. The checks, for example, show the banks on which they were drawn, the banks in which they were deposited, the dates they were transacted, and the identity of the endorsers.

Gov.Brief, at 19.

I have previously set forth the standards governing courts' decisions regarding bills of particulars. I incorporate that discussion here, by reference, and will not repeat the standards. However, after weighing the competing considerations governing the grant or denial of bills of particulars, I have concluded that the defendant is not entitled to a bill of particulars with respect to counts 6 through 9 of the indictment.

The government has provided the defendant with discovery which, together with the detailed information contained in the indictment, I find sufficiently provides the defendant with enough information to adequately inform him of the nature of the charges brought against him, to prepare his defenses, to avoid surprise during the trial, and to protect him against a second prosecution for an inadequately described offense. *See Addonizio*, 451 F.2d at 63–64.

Accordingly, I will deny the defendant's motion for a bill of particulars with respect to Counts 6 through 9 of the indictment.

### F. Motion to Strike or Dismiss the Aiding and Abetting Allegations from the Indictment, or Alternatively, Motion for a Bill of Particulars

Next, the defendant directs the court's attention to the 18 U.S.C. § 2 aiding and abetting allegations charged against him in Counts 1–9 and 14–18 of the indictment. The defendant points out that the indictment does not allege the elements of a § 2 violation. Additionally, the defendant contends that the indictment does not set forth any facts which would support the charge that the defendant acted as an aider and abettor or as a principal. According to the defendant, the indictment thus "provide[s] Mr. Caruso with no means of preparing to defend against these charges and no basis for pleading double jeopardy, if necessary, in the future." Def.Brief. at 24. The defendant seeks either the dismissal of all of the aiding and abetting charges, or a bill of particulars on the counts at issue.

The government has argued in opposition that

> It is routine practice for the United States to charge Section 2 as a precautionary measure to cover situations where the defendant causes another to commit one or more elements of the crime charged.... Thus, for example, in a situation where defendant does not actually mail the letter or personally transport the check interstate, but instead causes it to be done, his conduct will nonetheless satisfy the particular elements of the mail fraud statute ... or the interstate transportation of money taken by fraud statute.

Gov.Brief at 20. Additionally, the government also contends that any potential confusion about the meaning of Section 2 will be resolved by the government's proposed jury charge involving Section 2.

Finally, at oral argument on this motion, the government further explained that the indictment was charging an 18 U.S.C. § 2(b) offense.

I have concluded that the defendant is not entitled to a bill of particulars for the aiding and abetting allegations. In *United States v. Calvi*, 830 F.Supp. 221 (S.D.N.Y.1993), *aff'd*, 52 F.3d 312 (2d Cir.) (Table), *cert. denied*, —— U.S. ——, 116 S.Ct. 200, 133 L.Ed.2d 134 (1995), District Judge Broderick analyzed a defendant's request for a bill of

particulars regarding aiding and abetting counts charged in the indictment. The defendant argued that a bill of particulars was necessary because the bare-boned allegations of aiding and abetting, without any details, was "confusing." Judge Broderick rejected this request, explaining that

> There is no occasion for. such confusion. The purpose of the reference to section 2 is to advise the defendants that if the proof turns out to show merely assistance in the corrupt and extortionate acts charged or the use of interstate wire communications, a conviction may be had even if the defendant involved did not do these things directly.

> An order directing filing of a bill of particulars in regard to this rather detailed indictment would be inappropriate in view of the United States attorney having responded to all other discovery requests of the defense, and no claim of inadequacy of that response having been made.

> . . . .

> Rule 7(f) of the Federal Rules of Criminal Procedure does not require the United States Attorney to furnish a three dimensional colored motion picture of the prosecution's proof prior to trial. In the event that actual unfair surprise can be shown, an appropriate continuance may be considered.

*Calvi,* 830 F.Supp. at 222–23.

I agree with Judge Broderick's analysis. Furthermore, I find in this case that the defendant has been adequately informed of the § 2 violations which have been charged in the indictment. The government has provided the defendant with discovery which, together with the government's explanation that the defendant will be tried pursuant to § 2(b), provides the defendant with sufficient information to adequately inform him of the charges being brought against him, to enable him to prepare his defenses, to avoid surprise during the trial, and to protect the defendant against a second prosecution for an inadequately described offense. *See Addonizio,* 451 F.2d at 63–64.

Accordingly, I will deny the defendant's motion to dismiss the aiding and abetting charges. Additionally, I will deny the defen-

dant's motion for a bill of particulars with respect to counts 1–9 and 14–18 regarding the 18 U.S.C. § 2(b) charges contained therein.

## G. Rule 404(b) Evidence

Additionally, the defendant has moved for the pretrial disclosure of any Rule 404(b) evidence which the government intends to rely upon at trial. In response, the government initially expressed its intention of disclosing general 404(b) evidence to the defendant one week prior to trial. Moreover, the government also initially "specifically reserve[d]" its right to introduce "any evidence of other crimes, wrongs or acts contemplated by Rule 404(b) during the trial, without having first given notice to defendants, upon a showing of good cause, satisfactory to the court."

Fed.R.Evidence 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of knowledge, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Rule 404 provides that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." The Court of Appeals for the Third Circuit has emphasized that Rule 404 is a rule of inclusion rather than a rule of exclusion. *Government of the Virgin Islands v. Edwards,* 903 F.2d 267, 270 (3d Cir.1990).

During oral argument on these motions, the defendant stated that any Rule 404(b) material should be turned over thirty days in advance of trial. In response, the government changed its initial positions, *supra,* and agreed that it would turn over any 404(b) material thirty days prior to trial.

I will hold the government to the representation it made during the oral argument, and

any Rule 404(b) material upon which the government intends to rely shall be turned over thirty days prior to trial. Inasmuch as the defendant and the government have now agreed that Rule 404(b) material will be turned over thirty days prior to trial, there are no longer any contested issues regarding defendant's request for Rule 404(b) material. Therefore the defendant's motion is denied as moot.

## H. Reciprocal Discovery

The government has cross-moved for reciprocal discovery which the defendant does not appear to oppose. This court grants the government's cross-motion to the extent that it seeks production of information encompassed by Federal Rule of Criminal Procedure 16(b)(1). The defendant should make available those materials he intends to introduce as evidence in chief at trial.

## I. Motion to Compel Production of Documents From Coopers & Lybrand

■ Finally, the defendant has moved to compel the production of documents from C & L pursuant to a Fed.R.Crim.P. 17(c) subpoena, and C & L has cross-moved for an order quashing that subpoena. Under the subpoena, the defendant seeks, for the years 1987 through the present:

1. All documents concerning [C & L's] policies and practices regarding partner relocation, subsidies paid in lieu of relocation, and reimbursement to partners or others in connection with partner relocation. . . .

. . . .

2. All documents concerning reimbursement and subsidy payments made as a result of the relocation of [the names of several individuals are omitted].

3. All documents concerning [C & L's] policies and practices with respect to the authority of managing partners within their area of geographic responsibility, including but not limited to documents concerning managing partners' authority to make decisions regarding charitable contributions and accounting therefor, office expenses, the discounting of bills, and other subjects as to which managing partners had decisionmaking responsibility.

Rule 17(c) Subpoena, attached as Exhibit B to Defendant's Brief in Support of Pretrial Motions.

The defendant claims that he needs these documents in order to establish a state-of-mind defense to the crimes charged in the indictment. Specifically, while the defendant does not contest many of the facts underlying the allegations in the indictment, the defendant claims, based on his personal knowledge as managing partner at C & L of C & L's practices and policies, that his actions were in accord with his authority as managing partner at C & L, or that his actions were appropriate "in light of express [C & L] policy or well-established firm practice." According to the defendant, the documents sought in the subpoena will help him establish a variance between stated policy and usual practice at C & L. The defendant claims that his actions were in accord with C & L's practices (presumably, even if such actions were not in accord with stated policy) and that he therefore did not act with criminal intent. Defendant claims that he needs the documents in the subpoena in order to establish his defense.

In opposition, C & L argues that the information sought through the subpoena constitutes impermissible discovery. Furthermore, C & L claims that some of the information sought cannot possibly be relevant because the information sought postdates any of the crimes with which the defendant is charged. Moreover, C & L argues that the materials cannot be relevant because the defendant cannot demonstrate that he relied upon information of which he was unaware. Finally, because the subpoena allegedly does not set forth with specificity the documents requested by the defendant, C & L argues that the defendant has failed to demonstrate that he is entitled to the pretrial production of those documents pursuant to the standards governing such pretrial requests.

Both the defendant's motion and C & L's cross motion are predicated upon Federal

Rule of Criminal Procedure 17(c). Rule 17(c) provides that

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

Despite Rule 17(c)'s broad language, it is well-settled that Rule 17(c) is not a means through which a defendant can obtain discovery beyond that authorized by Fed.R.Crim.P. 16. *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220–21, 71 S.Ct. 675, 678–79, 95 L.Ed. 879 (1951). Rule 17(c) has been recognized, however, as a "convenient and time saving tool for trial preparation," which can be invoked by either the defendant or the government. *United States v. Messercola,* 701 F.Supp. 482, 485 (D.N.J.1988). *See United States v. Cuthbertson,* 630 F.2d 139, 144 (3d Cir.1980) ("[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial.") (citing *United States v. Malizia,* 154 F.Supp. 511, 513 (S.D.N.Y.1957)), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). The purpose of Rule 17(c) is thus to prevent trial delays by providing "a time and place before trial for the inspection of subpoenaed materials." *Id.* (quoting *Bowman Dairy Co.,* 341 U.S. at 220, 71 S.Ct. at 678).

 A party seeking pre-trial production of documents or other materials pursuant to Rule 17(c) must make the following showings:

(1) that the documents are evidentiary and relevant;

(2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Cuthbertson,* 630 F.2d at 145 (quoting *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103–04, 41 L.Ed.2d 1039 (1974)). "Decisions regarding the quashing or modification of rule 17 subpoenas are committed to the district court's discretion." *Id.* (citing *Nixon,* 418 U.S. at 702, 94 S.Ct. at 3104–05). Generally, however, "[a] subpoena for documents may be quashed if their production would be "unreasonable or oppressive," but not otherwise." *Nixon,* 418 U.S. at 698, 94 S.Ct. at 3102–03.

After reviewing the subpoena pursuant to these standards, I have concluded that the defendant is entitled to the documents he seeks. First, the documents are clearly evidentiary, relevant, and admissible. The defendant claims, based upon his first hand knowledge as managing partner at C & L, that the documents will demonstrate a variance between policy and actual practice at C & L with regard to, *inter alia,* partner relocation. The defendant contends that his actions in this case were in accord with C & L's actual practices and that he therefore did not possess criminal intent when he engaged in the activities charged in the indictment. Therefore, the defendant claims that the documents he seeks are critical for his preparation of a defense in this case.

I am persuaded by the defendant's explanation. The documents are relevant to establishing the defendant's state of mind at the time of the offense, and as such would be admissible at trial. Moreover, as the defendant claims, such material regarding C & L's practices and customs would be admissible at trial pursuant to Federal Rule of Evidence 406. Accordingly, I find that the defendant's subpoena meets the first element of the *Nixon* test.

I am not persuaded by C & L's argument that the subpoena is overbroad because the

defendant seeks documents for years in which no fraudulent acts are alleged. C & L points out that the charges in the indictment extend to acts which occurred only until July 6, 1990. Drawing on this point, C & L claims that the documents from years post-dating 1990 could not possibly have any relevance to the defendant's case. Accordingly, C & L requests this court to quash the subpoena.

I will reject this argument because contrary to C & L's claims, the indictment actually alleges fraudulent conduct by the defendant up through and including 1993. Furthermore, I find that C & L's policies and procedures post-dating 1993 up until the present are relevant to a determination of whether C & L employed a practice or pattern of deviating from official policy. Therefore, C & L's argument on this point is rejected as unpersuasive.

Next, I also find that the defendant has demonstrated that the documents at issue are not otherwise procurable in advance of trial by the exercise of reasonable diligence. The defendant argued, without contradiction from C & L, that C & L will not permit its employees to speak with the defendant or his representatives and that C & L will not otherwise cooperate with the defendant's document requests.

Furthermore, I find that the defendant's ability to prepare for trial will be compromised without the subject documents and that the trial would be delayed, unreasonably in my judgment, if the defendant does not receive the documents prior to trial. The defendant's counsel represented frankly to the court on the record at oral arguments on these motions, that the defendant would not be able to open to the jury without first having had an opportunity to review the documents at issue in the subpoena. I accept the defendant's representation, and in the absence of any contrary showing by C & L, find that the defendant has met this third element of the *Nixon* test.

Finally, I also find that the defendant's requests are reasonably specific and do not appear to constitute the type of bad faith "fishing expedition" condemned by courts. The defendant has represented that he needs these documents for the purposes of establishing a state of mind defense to the crimes charged, as I have explained above. The defendant's requests are purportedly based upon his personal knowledge, as a former managing partner at C & L, of instances where practice deviated from policy, in a manner relevant to his defense. In an effort to establish his defense, the defendant has requested specific types of documents, information regarding specific instances of C & L partners' relocations, and information regarding managing partners' decisionmaking authority.

For instance, Paragraph 1 of Addendum A to the subpoena sets forth a request for documents relating to partner relocation and firm practice and delineates specific types of documents which fall within this request. Furthermore, in paragraph two of the subpoena, the defendant requests documents relating to specific instances of partner relocation, and specifies the exact partners' whose relocation experiences are at issue. Finally, in paragraph 3, the defendant seeks documents relating to managing partner decisionmaking authority, and specifically seeks documents relating to "managing partners' authority to make decisions regarding charitable contributions and accounting therefor, office expenses and the discounting of bills...."

I am cognizant of the Supreme Court's admonition that Rule 17 should not be converted into a broad discovery device. Furthermore, I am aware of the points C & L raised during oral argument regarding the degree of specificity required before a court can enforce a Rule 17(c) subpoena. However, after reviewing the defendant's subpoena in the light of these points, I disagree with C & L's arguments.[3]

---

**3.** Contrary to C & L's assertions, the defendant's explanations of relevance in this case distinguishes the instant case from *United States v. Ashley,* 162 F.R.D. 265, 267 (E.D.N.Y.1995), and the case upon which the *Ashley* court relies, *United States v. Rich,* 1984 WL 845 (S.D.N.Y. Sept. 7, 1984) for the proposition that Rule 17(c) subpoenas cannot be "conclusory." In both *Ashley* and *Rich,* the subpoena proponents simply stated that they had met the *Nixon* test, without elaboration or explanation of how the test had been so met. *See Ashley,* 162 F.R.D. at 267

The defendant's subpoena is targeted at uncovering specific documents, or types of documents, which are relevant to establishing a potential defense for the defendant. Therefore, this case is unlike those in which broad production requests are contained in Rule 17 subpoenas with a mere hope that something helpful might be uncovered. *See, e.g., United States v. Hang,* 75 F.3d 1275, 1283–84 (8th Cir.1996) (affirming district court decision where subpoena was based on sheer speculation, defendant stated that it would be hard pressed to describe information it hoped to discover in the materials, and district court refused to authorize issuance of the subpoena which it characterized as "a pure total fishing expedition"). The defendant's subpoena is as specific as could be reasonably expected under the circumstances, (i.e., where the defendant does not actually possess the documents, but has first hand knowledge as former managing partner about what the documents will purportedly contain), the request appears to be in good faith, and I find no evidence that the defendant is engaging in some type of fishing expedition with his subpoena. Thus, I find that the defendant has met the fourth element of the *Nixon* test.

For the foregoing reasons, I find that the defendant is entitled to the production of the documents requested in the Rule 17(c) subpoena, which have not yet been turned over by C & L.[4] C & L shall turn the documents over to the defendant before December 20, 1996. C & L's cross motion to quash the subpoena is denied.

## III. Conclusion

In accord with the foregoing, the defendant's

(1) motion to dismiss counts one through three, for failure to state a mail fraud offense or for being duplicitous is DENIED.

(2) motion to dismiss counts 17 and 18 on the basis of multiplicity, or to force the government to elect between charging a violation of either 18 U.S.C. § 1956 or § 1957 is DENIED.

(3) motion to strike surplusage from Paragraph 8 of counts 1–3 and from Paragraph 6 of counts 4 and 5, or in the alternative for a bill of particulars with respect to counts 4 and 5 is DENIED.

(4) motion for a bill of particulars for counts 6 through 9 is DENIED.

(5) motion to dismiss the 18 U.S.C. § 2 *aiding and abetting charges* from counts 1–9 and 14–18 of the indictment and the defendant's alternate motion for a bill of particulars on these counts are both DENIED.

(6) motion for disclosure of Rule 404(b) evidence is DENIED as MOOT, insofar as the government and the defendant have agreed that such materials will be turned over thirty days before trial.

(7) motion to compel production of documents pursuant to Fed.R.Crim.P. 17(c) is GRANTED.

Moreover, the government's motion for reciprocal discovery, to which the defendant did not offer any opposition is GRANTED, and Coopers & Lybrand's motion to quash the Rule 17(c) subpoena is DENIED.

(explaining that proponent had stated in support of subpoena that he was "quite familiar with the burden which the defendant must carry in seeking a 'So Ordered' Rule 17(c) subpoena and submits that [Defendant] has met that burden."); *Rich,* 1984 WL 845 at \*3 ("Defendants state that the materials sought are significant to its defense, are procurable only from [opponent], that pre-trial production of these documents will facilitate trial preparation, and that the subpoena is not intended as a general fishing expedition. However, defendants provide nothing in support of these assertions."). By contrast, the defendant in this case has provided detailed reasons regarding his need for the documents in C & L's possession. Therefore, I am unconvinced by C & L's arguments based upon *Ashley.*

4. During oral arguments on these motions, C & L produced documents which C & L claimed were C & L relocation policies with respect to relocation benefits, for the years 1985, 1994, and 1996. These documents were turned over to the defendant during oral argument and are therefore not the subject of the instant controversy.